UNION TRUST COMPANY OF LANCASTER, PENNSYLVANIA, Plaintiff, v. ANSON S. JOHNS et al., Defendants.

Same Plaintiff, v. Same Defendants.

MICHAEL R. HOFFMAN, Plaintiff, v. Same Defendants.

(Supreme Court, Kings Special Term, April, 1919.)

Trusts — when valid trust created — mortgages — trustees cannot derogate trust estate.

An agreement between a trust company and a mortgagor recited a conveyance to the trust company, as trustee, of a portion of the mortgaged premises, a large tract of land, and both instruments were intended as a part of the same transaction. The trust company by said agreement covenanted to hold the title to the real property conveyed upon trust to sell the same, and after payment from the proceeds of sale, of certain mortgage liens on different parts of the premises described in said deed, a mortgage made directly to the trust company, the payment of certain items for taxes, interest and necessary expenses in developing the property, and other obligations of the mortgagor, to reconvey the unsold real estate, etc. *Held*, that a valid express trust was created by said agreement and the deed of conveyance recited therein.

The trust company having accepted the trust and entered upon its performance could not destroy it by taking assignments

of mortgages against the property, which was superior to the trust company's title as trustee under the trust agreement, and use them to destroy that title.

The trust company will not be permitted to maintain an action to foreclose said assigned mortgages years after the time when the last interest was paid thereon in an endeavor to enforce them against the trust estate.

ACTIONS to foreclose mortgages.

Davidson & Underhill (James K. Foster, of counsel), for plaintiff in each case.

John Newton Johnson, for defendant Johns in each case.

BENEDICT, J. These actions are brought to foreclose three mortgages and involve the same principles. The first action is for the foreclosure of a mortgage given to secure the payment of the principal sum of $7,500, bearing date February 13, 1909, made by the defendant Anson S. Johns and wife to the Home Title Insurance Company, and recorded on February 16, 1909, in the register's office of Kings county. This mortgage and the bond accompanying the same came through various mesne assignments to the plaintiff, Union Trust Company of Lancaster, Penn., by assignment dated March 10, 1913, and recorded March 11, 1913. The complaint alleges that there is due to the plaintiff the sum of $7,500 of principal, with interest thereon from February 1, 1913. The second action is for the foreclosure of a mortgage given to secure the payment of the principal sum of $12,000, bearing date April 12, 1909, made by the defendant Anson S. Johns and wife to the plaintiff, Union Trust Company of Lancaster, Penn., and recorded in the said register's office on April 19, 1909. The complaint alleges that there is due to the

plaintiff, Union Trust Company of Lancaster, Penn., the sum of $12,000 of principal, with interest thereon from April 1, 1912. The third action is for the foreclosure of a mortgage given to secure the payment of the principal sum of $10,000, bearing date February 13, 1909, made by the defendant Anson S. Johns and wife to the Home Title Insurance Company of New York, and recorded in the said register's office on February 16, 1909. This mortgage and the bond accompanying the same came through various mesne assignments to the plaintiff Hoffman by assignment, dated December 30, 1913, and recorded April 23, 1914. The complaint alleges that there is due to the plaintiff Hoffman the sum of $10,000 of principal, with interest from August 1, 1913. The plaintiff, Michael R. Hoffman, is the president of the plaintiff Union Trust Company of Lancaster, Penn.

The defendant Anson S. Johns alone answered. By his answer he alleged as a defense that the principal of the several mortgages was not due because the time for the payment thereof had been extended, and as to the mortgage held by the plaintiff Hoffman, he alleged that said mortgage and the bond accompanying the same were in reality owned by the plaintiff Union Trust Company of Lancaster, Penn. He further alleged as a defense that the mortgaged premises were part of a tract of land which had been conveyed to him in June, 1904, by the Brighton Beach Racing Association, and that there were several mortgages upon said tract, including the three mortgages involved in these actions. He further alleged that by a deed dated April 28, 1909, and recorded in the said register's office on April 29, 1909, he, with his wife, conveyed the larger tract to the plaintiff Union Trust Company of Lancaster, Penn., as trustee; and furthermore, that by an agreement bearing

date May 7, 1909, made between himself and the Union Trust Company of Lancaster, Penn., and reciting the last mentioned conveyance, which deed and agreement were intended to be part of the same transaction, the Union Trust Company covenanted that it held title under said deed to the real property so conveyed to it upon certain trusts and for certain purposes, to wit: " *First.* For the purpose of selling the same and making good and legal title thereto; to receive the proceeds of the said sales and to apply the same as follows: 1. To the payment of four mortgages, being equal in lien, on different parts of the premises described in said deed, which four mortgages aggregate $30,000, which amount, together with interest, is to be first paid out of the proceeds of the sale of said land. 2. To pay a second mortgage of $22,500, with interest thereon, covering certain portions of the real estate described in the said deed, in which A. L. Eshbach and J. M. Martin are mortgagees, together with the interest on said mortgages. 3. To pay a mortgage of $12,000 and interest, in which the Union Trust Company of Lancaster, Pa., is mortgagee. 4. To pay taxes, interest and the necessary expense in developing the said tract of land. 5. To pay $5,000 to J. M. Martin and William Wohlsen, which amount is now due them. 6. To pay a note of $1,000, with interest thereon, to Milton Buckwalter. 7. To distribute the balance, after above payments are made, and whenever the sum of $5,000 is in the trustee's possession, as follows: * * * The above payments are all to be made in the order mentioned, and after they are fully completed and ended, the balance of the real estate, if any remains unsold, shall be reconveyed by good and sufficient deed or deeds to the said Anson S. Johns, his heirs or assigns. It is further agreed and understood that the Union Trust Company of Lancaster, Pa., shall receive a commission of 3 per cent.

on all moneys received by them. This agreement shall become null and void and the trusteeship created by the above referred to deed now on record shall end when the indebtedness above set forth is paid and the property remaining unsold, if any, reconveyed to the said Anson S. Johns, his heirs or assigns, according to the terms of this agreement.''

It will be observed that as to the mortgage for $12,000, made directly to the Union Trust Company of Lancaster, Penn., it is recited and its payment is provided for in the trust agreement. The mortgage for $7,500 is one of the four equal lien mortgages on different parts of the property which aggregate the sum of $30,000 of mortgage indebtedness referred to in the agreement. The mortgage for $10,000 is also one of the mortgages making up the aggregate of $30,000 referred to in the trust agreement.

It is the contention of the defendant Johns that the deed and agreement which he made to and with the Union Trust Company created a valid express trust under section 96 of the Real Property Law, subdivision 1, '' To sell property for the benefit of creditors,'' and such being the case, that it was not competent for the trustee, having entered upon the discharge of the duties of his office or trust, to acquire outstanding claims against the property held in trust for the purpose of enforcing them against the trust estate and thereby destroy the trust. On the other hand, the plaintiffs claim that there was no express trust, but a mere power in trust created by the deed and agreement. And in support of their contention they have cited the case of *Cooke* v. *Platt,* 98 N. Y. 35, 38, where it is said: '' The statute authorizes a trust to sell lands for the benefit of creditors and legatees (§ 55). But we are of opinion that it is essential to the constitution of a valid trust for either of these purposes that the power of sale conferred upon the trustees

must be absolute and imperative, without discretion, except as to the time and manner of performing the duty imposed, and that it is not sufficient to invest the trustee with a merely discretionary power of sale, which he may or may not exercise at his option, and which does not operate as a conversion. The sale or other disposition mentioned in the statute must be the direct and express purpose of the trust.'' They argue that the language in which the trust in the present case is created is permissive and not imperative. In this contention I think they are in error, and that a valid express trust was created by the deed and agreement. If I am right in this view, then it follows as a matter of course that the trustee, having accepted the trust and entered upon its performance, cannot do anything in derogation of it, and certainly he cannot destroy it by acquiring in his own right existing obligations superior to his title as trustee and use them to destroy that title. In the present case the trustee voluntarily accepted the trust, entered upon the duties of the office, and to some extent discharged those duties, selling portions of the property conveyed to it and applying a part of the proceeds of such sales in accordance with the provisions of the trust agreement. It does not appear what prompted the acquisition by the trustee and by the plaintiff Hoffman of the mortgages which are the subject of these actions. Doubtless it was done in support of and not in hostility to the title of the trustee, and to permit it to carry out the purposes declared by the trust agreement.

There is nothing in the record to show why the trustee has refrained for so long a time in disposing of the property conveyed to it, and in winding up the trust, but, whatever the motive may have been, or whatever the conditions of the real estate market

may have been, I can see no reason why the trustee comes into court of equity years after the time when the last interest was paid upon these mortgages in an endeavor to enforce them against the trust estate. It would appear probable that a sale of the property by the trustee under the powers conferred upon it by the trust agreement and subject to those mortgages would realize a better market and a higher price for the property than a forced sale under foreclosure of the mortgage held by it. It is certainly the duty of the trustee to act for the best interests of the beneficiary, and to use every proper means of conserving the trust estate committed to its care, and not to dissipate the estate held in trust by subjecting it to the hazard of a foreclosure sale under a mortgage held adversely to the rights of the beneficiaries under the trust agreement.

These views find support, if any were needed, in the opinion of Chancellor Kent, in the case of *Hawley* v. *Mancius,* 7 Johns. Ch. 174, a case having many features in common with the instant cases, although not referred to in the briefs submitted. What has been said concerning the mortgages held by the Union Trust Company of Lancaster, Penn., applies also to the mortgage held by Mr. Hoffman, the president of that company. He should not, in the light of his relationship to the company and his knowledge of the situation concerning the property which he manages, as president of the trustee, be regarded as occupying toward the trust property and the beneficiary a different situation from that occupied by the corporation plaintiff. Judgment will be rendered in accordance herewith, but without costs.

*Judgment accordingly.*